**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

JAMES W. WINTON,

               Plaintiff,

                                               Case No. 5:14-cv-578-Oc-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

               Defendant.

_____/

## OPINION AND ORDER[1]

### I. Status

     James W. Winton ("Plaintiff") is appealing the Commissioner of the Social Security

Administration's final decision denying his claim for disability insurance benefits ("DIB") and

supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of

"[m]ajor heart attacks," "bad back," "shoulder," "neck," "carpal tunnel," and "[d]iabetes." See

Transcript of Administrative Proceedings (Doc. No. 14; "Tr." or "administrative transcript"),

filed January 12, 2015, at 134. (capitalization and emphasis omitted). On December 14,

2011, Plaintiff protectively filed applications for DIB and SSI,[2] alleging an onset disability

date of April 2, 2003.[3] Tr. at 109-10 (DIB) His protective filing date is listed elsewhere in the

_____

[1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed January 12, 2015; Reference Order (Doc. No. 16), entered January 14, 2015.

[2]     A copy of Plaintiff's SSI application does not appear to be located in the administrative transcript. Tr. at 1-325. Plaintiff acknowledges this in his brief. Plaintiff's Brief (Doc. No. 18), filed March 3, 2015, at 2 n.1. The absence of this record does not affect the issues before the Court.

[3]     Plaintiff previously filed for DIB and SSI in February 2009. Tr. at 39, 105-06. Those earlier applications are not at issue here.

transcript as November 17, 2011.  Tr. at 29, 46, 47, 130.  Plaintiff's applications were denied

initially, <u>see</u> Tr. at 38-45, 46, 48-49 (DIB), 31-32 (SSI), and upon reconsideration, <u>see</u> Tr. at

47, 57-58 (DIB).[4]

On June 26, 2013, an Administrative Law Judge ("ALJ") held a hearing at which the

ALJ heard testimony from Plaintiff, who was present with a non-attorney representative, and

a vocational expert ("VE").  Tr. at 310-25.  At the time of the hearing, Plaintiff was forty-nine

(49) years old.  Tr. at 313.  On August 21, 2013, the ALJ issued a Decision finding Plaintiff

not disabled from April 2, 2003 through the date of the Decision.  Tr. at 15-28.  Plaintiff then

requested review by the Appeals Council, Tr. at 10-11, and submitted evidence to the

Council in the form of a brief authored by his representative, Tr. at 7; <u>see</u> Tr. at 308-09

(brief).   On August 29, 2014, the Appeals Council denied Plaintiff's request for review,

making the ALJ's Decision the final decision of the Commissioner. Tr. at 5-7.  On October

23, 2014, Plaintiff commenced this action under 42 U.S.C. § 405(g) and § 1383(c)(3), by

timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final

decision.

Plaintiff makes four arguments on appeal: (1) that the ALJ "failed to apply the correct

legal standards to the opinion of [Plaintiff's] treating physician, Dr. [Suhas] Kulkarni"; (2) that

the ALJ "failed to apply the correct legal standards to the opinion of [examining physician,]

Dr. [Donald J.] Tindall"; (3) that the ALJ "failed to apply the correct legal standards to the

opinion of [psychiatric consultant,] Dr. [Aroon] Suansilppongse"; and (4) that the ALJ "failed

to apply the correct legal standards to [Plaintiff's] testimony."  Plaintiff's Brief (Doc. No. 18;

---

[4]        The denial of the SSI on reconsideration also does not appear in the transcript but is not disputed
by Plaintiff.  Plaintiff's Brief (Doc. No. 18) at 2.

"Pl.'s Br."), filed March 3, 2015, at 2, 9-18.  Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") on May 15, 2015.  After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed for the reasons stated herein.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 17-27.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since April 2, 2003, the alleged onset date."  Tr. at 17 (emphasis and citation omitted).  At step two, the ALJ found that Plaintiff "has the following severe impairments: coronary artery disease, carpal tunnel syndrome, diabetes mellitus, degenerative disc disease, obesity, anxiety, and depression."  Tr. at 17 (emphasis and citation omitted).  At step three, the ALJ ascertained

---

[5]        "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 18 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform less than the full range of light work. . . . [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for up to six hours in an eight-hour workday. He can sit up to six hours in an eight-hour workday. [Plaintiff] can occasionally climb, balance, kneel, crouch, and crawl. He must avoid concentrated exposure to extreme cold, heat, vibration, work at heights, and work around dangerous moving machinery. Bilateral fingering and reaching overhead is limited to frequently. [Plaintiff] can perform simple tasks with only occasional interaction with the public.

Tr. at 20 (emphasis and citations omitted). At step four, the ALJ found Plaintiff "is unable to perform any past relevant work" as a "structural steel worker," "sawmill operator," "construction worker I," or "dairy farm laborer." Tr. at 26 (some emphasis and citation omitted). At step five, after considering Plaintiff's age ("39 years old . . . on the alleged disability onset date"), education ("limited"), work experience, and RFC, the ALJ found, with the assistance of testimony from the VE, that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 26 (emphasis and citations omitted), including representative occupations such as "label coder," "router," and "collator operator," Tr. at 27.[6] The ALJ concluded that Plaintiff "has not been under a disability . . .

---

[6]   The ALJ further noted that if the VE testified that were Plaintiff limited to sedentary work, there would still be representative jobs available in the national economy that Plaintiff could perform, including "document preparer," "addresser," and "table worker." Tr. at 27 (citations omitted).

from April 2, 2003, through the date of th[e D]ecision." Tr. at 27 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV.  Discussion

As indicated above, Plaintiff raises four issues before this Court.  The first three concern the ALJ's handling of medical opinions and are addressed together.  The fourth issue concerns the ALJ's credibility finding.  A discussion follows.

## A.  Medical Opinions

Regarding his treating physician, Dr. Kulkarni, Plaintiff argues "[t]he ALJ purportedly gave Dr. Kulkarni's opinion 'significant weight' but she then disregarded the functional limitations he assigned."  Pl.'s Br. at 12.  Plaintiff next claims error in the ALJ's "cit[ation] to MRIs from April and May 2004 to disregard Dr. Tindall's opinion that was rendered nine years later [in 2013]."  Id. at 14 (emphasis omitted).  As for the opinion of Dr. Suansilppongse, although the ALJ attributed "significant weight" to this doctor's opinion,  Plaintiff argues that "[t]he ALJ did not account for [Plaintiff's] limited ability to appropriately interact with supervisors and co-workers," which was specifically included in Dr. Suansilppongse's opinion. Id. at 16.

### 1.  Applicable Law

The Regulations establish a "hierarchy" among medical opinions[7] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919,

---

[7]        "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).  The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[8] the Regulations instruct ALJs how to properly weigh such a medical opinion.  See 20 C.F.R. § 404.1527(c).  Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  Id.  When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician).  Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate

---

[8]    A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  See 20 C.F.R. § 404.1502.

reasons showing "good cause" for discounting it.  <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records.  <u>Phillips</u>, 357 F.3d at 1240-41; <u>see also</u> <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583-84 (11th Cir. 1991); <u>Schnorr v. Bowen</u>, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).  An examining physician's opinion, on the other hand, is not entitled to deference.  <u>See</u> <u>McSwain v. Bowen</u>, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing <u>Gibson v. Heckler</u>, 779 F.2d 619, 623 (11th Cir. 1986)); <u>see also</u> <u>Crawford</u>, 363 F.3d at 1160 (citation omitted).

An ALJ is required to consider every medical opinion.  <u>See</u> 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive").  While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," <u>Oldham</u>, 660 F.2d at 1084 (citation omitted); <u>see also</u> 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 279 (11th Cir.1987)); <u>see also</u> <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1212 (11th Cir. 2005); <u>Lewis</u>, 125 F.3d at 1440.  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." <u>Winschel</u>, 631 F.3d at 1179 (quoting <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981)).

**2. Dr. Kulkarni**

Plaintiff first treated with Dr. Kulkarni on April 22, 2004, following a motor vehicle accident. Tr. at 198-99. Dr. Kulkarni diagnosed Plaintiff with "[p]osttraumatic cervical spine sprain/strain"; "[p]osttraumatic thoracic spine sprain/strain"; "[p]osttraumatic lumbar spine sprain/strain with radicular symptoms"; "[m]yofacial pain syndrome involving paravertebral muscles"; "[p]osttraumatic right shoulder rotator cuff impingement syndrome"; and "[p]osttraumatic bilateral hand carpal tunnel syndrome." Tr. at 199.

Plaintiff next saw Dr. Kulkarni on April 30, 2004, for electrodiagnostic study of both upper extremities. Tr. at 207. The study revealed "[m]oderate median nerve motor/sensory neuropathy across left and right wrist/hand" and "[m]oderate median nerve motor neuropathy across left proximal forearm." Tr. at 207.

On May 12, 2004, Plaintiff presented to Dr. Kulkarni with complaints of neck pain radiating into fingertips, upper and lower back pain, and shoulder pain. Tr. at 206. Upon examination, Dr. Kulkarni noted:

> [Plaintiff] had normal stance with tenderness over cervical, thoracic and lumbar vertebrae. Spasms were palpable over paravertebral muscles. There was restricted movement in all these areas. There was mild diffuse tenderness over right shoulder which had full range of motion. Muscle strength was 4/5 with bilateral hand finger flexion and finger abduction. Otherwise, strength was 4+/5 in upper and lower extremities. Sensation was decreased over median nerve distribution of right and left hand. Reflexes were 2+ and symmetrical. Axial compression and distraction test was positive. Spurling test was positive on right side. Fabere test and Trendelenburg test were negative. Tandem gait was normal. Median nerve compression test and Phalen test [were] positive at both wrists. Neer test and Hawkins test [were] positive at right shoulder.

Tr. at 206. Dr. Kulkarni intended to "order MRI of cervical spine to rule out any disc herniation" and "an orthopedic surgery consult because of carpal tunnel syndrome in both hands." Tr. at 206. Plaintiff was given a prescription for "wrist splints to be used on both

-9-

sides while awake." Tr. at 206. A May 28, 2004 MRI of the cervical spine showed "no evidence of disc bulge or herniation." Tr. at 208.

On July 7, 2004, Plaintiff saw Dr. Kulkarni for complaints of "neck pains graded 6[,] upper and lower back pains graded 5[,]" and "numbness in his hands." Tr. at 205. Dr. Kulkarni noted that Plaintiff was seen by orthopedic surgeon, Dr. Sullivan, who gave Plaintiff an injection in his right wrist.[9] Tr. at 205. Plaintiff was to continue wearing his wrist splints. Tr. at 205.

Plaintiff next saw Dr. Kulkarni on August 4, 2004, with continued complaints of neck, upper back, and lower back pain with "pins and needle-like feeling in both hands." Tr. at 204. Plaintiff's pain medications were refilled, and he was to continue using wrist splints. Tr. at 204.

On August 25, 2004, Plaintiff saw Dr. Kulkarni, who opined that Plaintiff had reached maximum medical improvement with a "26% whole person impairment." Tr. at 201-03. Dr. Kulkarni noted the following permanent restrictions: "no lifting, carrying, pulling or pushing of weights over 20 pounds, no frequent bending forwards and no prolonged sitting, standing or walking over one hour at a time without a five minute break." Tr. at 203. He further recommended Plaintiff "avoid repetitive flexion extension movement at both wrists and to avoid exposure to vibration to the wrists." Tr. at 203. Dr. Kulkarni stated, "Will follow up on

---

[9]    In a letter to Dr. Kulkarni dated June 25, 2004, Dr. Sullivan stated he saw Plaintiff for an orthopedic consultation and noted he observed signs consistent with bilateral carpal tunnel syndrome and impingement in right shoulder. Tr. at 295-96. X-rays taken of both wrists with carpal tunnel view were negative except for cysts. Tr. at 295. Dr. Sullivan injected Plaintiff's right carpal tunnel with Xylocaine and Cortisone. Tr. at 295. In a July 16, 2004 letter, Dr. Sullivan advised Dr. Kulkarni that Plaintiff obtained temporary relief with the Cortisone injection and "wishes to go ahead with bilateral endoscopic carpal tunnel release" which Dr. Sullivan was going to schedule in the near future on an out-patient basis. Tr. at 294. There are no additional records from Dr. Sullivan contained in the administrative transcript.

an as-needed basis." Tr. at 203.  There are no other records of treatment with Dr. Kulkarni in the administrative transcript.

### 3. Dr. Tindall

Plaintiff saw Dr. Tindall on June 20, 2013, for a one-time independent medical evaluation.  Tr. at 301-304.  Dr. Tindall noted Plaintiff was involved in a motor vehicle accident in 2004 in which Plaintiff injured his low back, left shoulder, right and left wrist, and left hand and forearm.  Tr. at 301.  It was further noted that Plaintiff experienced an acute myocardial infarction in November 2011 that was treated by angioplasty and stenting and followed six to eight hours later with a second acute myocardial infarction that was similarly treated.  Tr. at 301.

On physical examination, Plaintiff appeared "[a]lert and oriented times three."  Tr. at 302. Plaintiff's gait was normal but he walked and stood with his "back held stiffly," and he had "a moderate amount of difficulty getting in and out of [a] chair."  Tr. at 302. Plaintiff's grip strength was noted as "4+/5 bilaterally"; his "[r]ight and left wrist and elbow flexors and extensions [were] 5/5"; his "[r]ght shoulder abductors [were] 5/5"; and his "[l]eft shoulder abductors [gave] way secondary to pain."  Tr. at 302.  Plaintiff's range of motion was limited in the thoracolumbar spine and left shoulder.  Tr. at 302-03.  Dr. Tindall made the following diagnoses and conclusions:

> [Plaintiff] has chronic low back pain of uncertain etiology. [Plaintiff] has left thigh pain with findings consistent with meralgia paresthetica. [Plaintiff[ has left shoulder pain with findings consistent with adhesive capsulitis. [Plaintiff] has symptomatology and findings of bilateral carpal tunnel syndrome. [Plaintiff] has Dupuytren's disease of the right and left hand. [Plaintiff] has symptomatology and findings of left pronator teres syndrome. [Plaintiff] has stable angina pectoris.

Tr. at 303-04.

Dr. Tindall discussed Plaintiff's activities of daily living and documented that Plaintiff can "drive for short periods of time"; "he needs assistance with showering and dressing"; and his "[h]ands can be used for bathing, eating, dressing, and, with the dominant right hand, combing hair, brushing teeth, turning a door knob, and doing a very limited amount of writing." Tr. at 302. Dr. Tindall completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form on June 20, 2013. Tr. at 297-99. Dr. Tindall opined that Plaintiff can stand or walk less than two hours and sit for less than six hours in an 8-hour workday and must periodically alternate sitting and standing to relieve pain or discomfort. Tr. at 297-98. According to Dr. Tindall, Plaintiff should never climb, balance, kneel, crouch, or crawl. Tr. at 298. Plaintiff is limited in both upper and lower extremities in pushing and/or pulling and can only lift/carry less than ten pounds. Tr. at 297-98. Plaintiff is limited in reaching in all directions, handling, fingering and feeling. Tr. at 298. Dr. Tindall opined that Plaintiff's prognosis is guarded and medical improvement is not expected. Tr. at 299.

### 4. Dr. Suansilppongse

On August 20, 2012, non-examining state agency consultant, Dr. Suansilppongse, reviewed Plaintiff's records. Tr. at 278-91. Pertinent to Plaintiff's arguments, in completing the Mental RFC Assessment, Dr. Suansilppongse noted that Plaintiff is moderately limited in his ability to interact appropriately with the general public and in his ability to accept instructions and respond appropriately to criticism from supervisors. Tr. at 290. Dr. Suansilppongse concluded that Plaintiff's "anxiety and depression reaction and alleged pain would interfere with his ability for sustained concentration and persistence or for task completion. However, [Plaintiff] would be able to complete tasks at an acceptable pace." Tr. at 291. The doctor further found that Plaintiff's "social avoidance and anxiety reaction would

interfere with his ability for appropriate interaction with supervisors, coworkers or the public."

Tr. at 291.  Dr. Suansilppongse diagnosed "Mood Disorder NOS r/o Dysthymic Disorder."

Tr. at 281, 291.

### 5.  ALJ's Decision/Analysis

In discussing Dr. Kulkarni's opinion, together with two other doctors,[10] the ALJ stated

as follows:

> As for the opinion evidence, Suhas Kulkarni, M.D., [Plaintiff's] treating physician at Spine & Rehab Medicine, opined in August 2004 that [Plaintiff] had the following permanent restrictions: no lifting, carrying, pulling, or pushing of weights over 20 pounds; no frequent bending forwards, no prolonged sitting, standing, or walking over one hour at a time without a five-minute break; and [Plaintiff] must avoid repetitive movement and exposure to vibration at both wrists.
> . . .
> The undersigned accords significant weight to the opinions of Dr. Kulkarni, Dr. Patty, and Dr. Singth because they are consistent with the evidence of record as a whole in light of the limited course of treatment and the actual findings on physical examinations. Specifically, [Plaintiff] repeatedly demonstrated a normal gait, he was able to squat and heel-to-toe walk, he walked without an assistive device, and his grip strength was only mildly reduced at 4/5 on physical examinations.  In addition, since July 2004, [Plaintiff] only sought medical treatment once from a primary care physician.

---

[10]      The ALJ also referenced and attributed significant weight to the opinions of state agency medical consultants, Drs. James Patty and Gurcharan Singh.  Tr. at 24.  The ALJ summarized Dr. Patty and Dr. Singth's opinions as follows:

> James Patty, M.D., a State agency medical consultant, opined on May 8, 2012 that [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, scaffolds; reaching is limited to frequently in all directions, including overhead; and [Plaintiff] must avoid concentrated exposure to work hazards.

> Gurcharan Singh, M.D., a State agency medical consultant, completed a Physical [RFC] Assessment on August 20, 2012. Dr. Singh opined [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; occasionally crawl and climb ladders, ropes, scaffolds; and [Plaintiff] must avoid concentrated exposure to extreme cold, vibration, and work hazards.

Tr. at 23-24 (citations omitted).

Tr. at 23-24 (citations omitted).

Plaintiff argues that despite giving Dr. Kulkarni's opinions significant weight, she did not account in her RFC assessment for Plaintiff's need for a five-minute break every hour between sitting, standing or walking, nor did she include limitations for the wrist.  Pl.'s Br. at 11-12.  Defendant responds that "[t]he ALJ was not 'required to adopt wholesale Plaintiff's treating physicians' own determinations as to [his] ability to work if substantial evidence in the record supports the ALJ's contrary RFC finding.'"  Def.'s Mem. at 7 (purporting to quote Green v. Comm'r of Soc. Sec., 223 F. App'x 915 (11th Cir. 2007)).[11]

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a)(1).  It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1545(a)(5).  In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, the ALJ considered and specifically discussed the medical evidence of record and gave significant weight to Dr. Kulkarni's opinion to the extent consistent with the record as a whole given Plaintiff's limited treatment and the findings on physical examination.  Tr. at

---

[11]    The quotation Defendant attributes to Green, 223 F. App'x 915, is actually from Ellis v. Astrue, No. 2:10-cv-937-RDP (S.D. Ala. Sept. 20, 2011), at 16 (citing Green, 223 F. App'x 915).

24.  The ALJ also gave significant weight to the opinions of Drs. Patty and Singth, neither of whom opined that Plaintiff required a break every hour between sitting, standing and/or walking, nor opined that Plaintiff must avoid all vibration at the wrists.  Tr. at 23-24.  To the extent that Dr. Kulkarni's limitations were not adopted in total, the ALJ pointed to support in the record regarding the normal physical findings, including Plaintiff's normal gait, his ability to squat and heel-to-toe walk and walk without an assistive device, and his grip strength being only mildly reduced.  Tr. at 24.  The ALJ also noted Plaintiff's minimal treatment since 2004.  Tr. at 24.  Notably, Plaintiff has not directed the Court to other objective medical evidence that supports limitations greater than those assessed by the ALJ's RFC.  Upon review of the ALJ's Decision and the record as a whole, the undersigned finds no error in the ALJ's handling of the opinion of treating physician, Dr. Kulkarni.

As for the opinion of independent evaluator, Dr. Tindall, the ALJ "accorded little weight because Dr. Tindall's opinion was inconsistent with the imaging reports and findings on physical examination."  Tr. at 24.  Specifically, the ALJ noted:

> An MRI of the right shoulder in April 2004 showed no evidence of gross rotator cuff or labral tear[; and] . . .an MRI of the cervical spine in May 2004 showed no degenerative changes, spinal stenosis, or any evidence of disc bulge or herniation.  On physical examinations, [Plaintiff's] gait was normal, he was able to squat and heel-to-toe walk, he walked without an assistive device, and his grip strength was only mildly reduced at 4/5.

Tr. at 24 (citations omitted).

Plaintiff contends that the ALJ erred in affording Dr. Tindall's opinions little weight because the ALJ was comparing Dr. Tindall's 2013 opinion with medical evidence from nine years prior.  Pl.'s Br. at 14.  Plaintiff argues that "[i]t is very reasonable to infer that [Plaintiff's] condition had worsened over a nine[-]year period."  Id.  As noted by Defendant, however, "the

only medical records in Plaintiff's file between 2004 and the assessment provided by Dr. Tindall pertaining to Plaintiff's claim are examinations conducted by consultative examiners for the agency, a visit to the emergency room for a cut thumb, and a new patient visit in February 2012 with Dr. Liji George where Plaintiff reported he was non-compliant with treatment and testing but had no symptoms and felt fine."  Def.'s Mem. at 9 (referring to Tr. at 210-96, 231).

Plaintiff also argues that Dr. Tindall diagnosed Dupuytren's disease, but the ALJ "failed to even consider the functional limitations arising from this impairment."  Pl.'s Br. at 15.  As a preliminary matter, the ALJ did acknowledge Dr. Tindall's diagnosis.  Tr. at 23.  A diagnosis, however, says nothing about the severity of the condition or the limiting effect of an impairment.  See Moore, 405 F.3d at 1213 n.6 (noting that "the mere existence of ... impairments does not reveal the extent to which they limit [Plaintiff's] ability to work or undermine the ALJ's determination in that regard").

The ALJ properly considered Dr. Tindall's opinion and stated reasons supported by substantial evidence for discounting the doctor's opinion, and thus the Decision is due to be affirmed on this issue.

Plaintiff next challenges the ALJ's handling of the opinion of non-examining psychological consultant, Dr. Suansilppongse, who diagnosed Plaintiff with mood disorder not otherwise specified.  Pl.'s Br. at 15-16 (referring to Tr. at 291).  In discussing Dr. Suansilppongse's opinion, the ALJ stated as follows:

> Aroon Suansillppongse, (sic) M.D., a State agency psychological consultant, completed a Mental   [RFC] assessment form on August 20, 2012.   Dr. Suansillppongse (sic) opined that [Plaintiff] can understand, remember, and carry out simple instructions and complete tasks at an acceptable pace and he can complete tasks with infrequent contact with others.  The undersigned

> accords significant weight to [Dr. Suansilppongse's] opinion[] because [it is] consistent with the treatment record and findings on mental status examinations.

Tr. at 25 (citations omitted).  Relevant to the analysis of Dr. Suansilppongse's opinion, the ALJ also attributed significant weight to State agency mental health consultant, Thomas Conger, Ph.D., and summarized Dr. Conger's opinion that Plaintiff's "condition may result in some social difficulties but he shows the ability to relate effectively in general[]."  Tr. at 25 (referring to Tr. at 253-70);[12] see Tr. at 255.

Plaintiff argues that because Dr. Suansilppongse concluded that Plaintiff's social avoidance and anxiety would interfere with his ability for appropriate interaction with supervisors, coworkers or the public, the ALJ erred in failing to account in the RFC for Plaintiff's "limited ability to appropriately interact with supervisors or co-workers."  Pl.'s Br. at 16.  In making her RFC assessment, the ALJ noted that Plaintiff "can perform simple tasks with only occasional interaction with the public,"  Tr. at 20, but the ALJ did not otherwise limit Plaintiff's interaction with supervisors or co-workers.

Although the ALJ did not adopt in the RFC finding all limitations identified by Dr. Suansilppongse, in light of the evidence of record, the undersigned finds no error in the ALJ's handling of Dr. Suansilppongse's opinion.  As discussed above, in addition to attributing significant weight to the opinions of Dr. Suansilppongse, the ALJ also attributed significant weight to Dr. Conger's opinion that Plaintiff is able to relate effectively in general.  Tr. at 25; see Tr. at 255.  Moreover, the ALJ noted that while Plaintiff indicated "problems getting along with family, friends, neighbors, and authority figures, . . . he reported he lived with family, he

---

[12]     The specific reference by the ALJ is to Exhibits 10F and 11F, which are found in the transcript at pages 253-70.

went outside daily, and he was never fired or laid off from a job because of problems with getting along with others." Tr. at 18 (citation omitted). Accordingly, the ALJ properly considered the opinion of Dr. Suansilppongse, along with the other mental health consultant's opinion, the testimony of the Plaintiff, and the record as a whole. The undersigned concludes that the Decision is supported by substantial evidence, and accordingly, is due to be affirmed on this issue.

## B. Credibility Finding

Plaintiff argues that the ALJ erred in making her credibility finding because she "failed to apply the correct legal standards to significant medical evidence." Pl.'s Br. at 18. Specifically, Plaintiff contends that the ALJ's failure to properly weigh the opinions of Drs. Kulkarni, Tindall, and Suansilppongse, whose opinions supported Plaintiff's testimony, resulted in the ALJ improperly discrediting Plaintiff. Id.

To establish a disability based on testimony of pain or other subjective symptoms, a claimant must satisfy two parts of a three-part test showing: (1) evidence of any underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged subjective symptoms; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed subjective symptoms. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (stating that "the standard also applies to complaints of subjective symptoms other than pain")). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"[C]redibility determinations are the province of the ALJ." Moore, 405 F.3d at 1212. The ALJ "must articulate explicit and adequate reasons" for finding a claimant "not credible." Wilson, 284 F.3d at 1225. "When evaluating a claimant's subjective symptoms, the ALJ must consider things such as (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). After considering the claimant's subjective complaints, "the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. at . 23. After discussing the medical evidence, the ALJ elaborated on her credibility assessment stating:

> The record reveals relatively infrequent trips to the doctor for the allegedly disabling symptoms. Since July 2004, [Plaintiff] only sought medical treatment from a primary care physician once in February 2012. In addition, [Plaintiff] testified he only takes Aspirin for his chest pain, in spite of the allegations of quite limiting pain in his back, wrists, left leg, neck, and shoulders. He reports that he cannot afford more definitive care for his symptoms, but there is no documentation that he pursued low cost or subsidized health care for more aggressive treatment. There is also no evidence that [Plaintiff] has required hospitalizations or more emergency room treatment for symptoms related to a physical disorder during the period at issue.

Tr. at 23 (citations omitted).

In discussing Plaintiff's activities of daily living, the ALJ noted that in a Function Report dated May 2, 2012, Plaintiff "indicated he bathed and dressed independently, microwaved meals, swept, put away laundry, made the bed, and drove alone." Tr. at 18 (referring to Tr. at 165-72);[13] see Tr. at 166-68. Thus, the ALJ's determination that Plaintiff's impairments are not as limiting as claimed is supported by substantial evidence in the record. Because the ALJ articulated specific reasons supporting his conclusion that Plaintiff's statements are less than credible, the Decision is due to be affirmed on this issue.

## V.  Conclusion

Based on a thorough review of the administrative transcript, and upon consideration of the respective arguments of the parties, the Court finds that the ALJ's Decision is supported by substantial evidence.

In accordance with the foregoing, it is hereby **ORDERED**:

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3),  **AFFIRMING** the Commissioner's final decision.

2.     The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 31, 2016.

_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge

jde
Copies to:
Counsel of record

---

[13]     The specific reference by the ALJ is to Exhibit 8E, which is found in the transcript at pages 165-72.

-20-